# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DAVID MCALISTER, SR,**

    **Petitioner,**

  **v.**          **Case No. 10-C-441**

**MICHAEL THURMER,**

    **Respondent.**

# DECISION AND ORDER DENYING PETITION
# FOR A WRIT OF HABEAS CORPUS

## I. PROCEDURAL HISTORY

On May 21, 2010, David McAlister, Sr. ("McAlister"), a person incarcerated pursuant to a state court judgment and proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1.) This court screened McAlister's petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases and ordered the respondent to answer the petition. (Docket No. 3.) The respondent has answered the petition, (Docket Nos. 9, 10), and the petitioner has replied, (Docket No. 12). The pleadings on the petition are closed and the matter is ready for resolution. All parties have previously consented to the full jurisdiction of a magistrate judge. (Docket Nos. 4, 7.)

On March 20, 2007, McAlister was convicted of two counts of armed robbery and one count of being a felon in possession of a firearm. (Docket No. 1 at 2.) McAlister was sentenced to 25 years of initial confinement to be followed by 9 years of extended supervision. (Docket No. 1 at 2.) McAlister appealed, and the court of appeals affirmed his conviction on September 23, 2009.

(Docket No. 1 at 3; see also Ans. Ex. E.) The Wisconsin Supreme Court denied review on January 14, 2010. (Docket No. 1 at 3; see also Ans. Ex. I.)

In his present petition, McAlister presents five related grounds for relief. He contends that a government witness, Alphonso Waters ("Waters"), testified on cross-examination at trial that he had no agreement with the state and was testifying only because it was the right thing to do. (Docket No. 1 at 7.) McAlister contends that Waters did have an agreement with the state where he would receive consideration with respect to the charges that Waters was facing in exchange for his testimony against McAlister. (Docket No. 1 at 6-7.) The state made no effort to correct what McAlister contends was false testimony regarding the absence of any agreement between Waters and the state thereby allegedly violated McAlister's rights to due process and confrontation. (Docket No. 1 at 6-8.) McAlister further alleges that the state did not disclose to the defense any concessions made to its cooperating witnesses in exchange for their testimony and improperly relied upon perjured testimony. (Docket No. 1 at 7, 9.) McAlister also alleges that the trial court improperly refused to give a falsus in uno jury instruction and that he was denied the effective assistance of counsel when his trial counsel failed to impeach Waters when Waters denied that an agreement existed. (Docket No. 1 at 10.)

The respondent acknowledges that McAlister's petition is timely and that McAlister has exhausted his state court remedies with respect to his claims that the government did not fully disclose concessions given to cooperating witnesses in exchange for their testimony and that the state relied upon perjured testimony. (Docket No. 9 at 2.) As for McAlister's claim regarding the circuit court's refusal to give a particular jury instruction, the respondent contends that this is wholly a matter of state law and thus not cognizable in a federal petition for a writ of habeas corpus. (Docket No. 9 at 3.) With respect to McAlister's two remaining claims for relief, that his rights to due process and confrontation were violated when the prosecution did not correct Waters' allegedly

false testimony and that he was denied the effective assistance of counsel, the respondent contends that McAlister has failed to exhaust his state remedies with respect to these claims. (Docket No. 9 at 3-4.) Thus, the respondent contends that McAlister's petition is a "mixed" petition and therefore McAlister is barred from obtaining relief. (Docket No. 9 at 3-5.)

**II. STANDARD OF REVIEW**

> Under the Antiterrorism and Effective Death Penalty Act (AEDPA), [a federal court] may grant a petition for habeas relief from a state court judgment only in one of two limited circumstances: if the state court decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Smith v. Grams, 565 F.3d 1037, 1043 (7th Cir. 2009).

The court shall presume that the state court's factual determinations are correct, and the petitioner may rebut this presumption only be clear and convincing evidence. Id. (citing § 2254(e)(1)). The petitioner "bears the burden of showing that the state court's finding of fact or its application of federal law was not only erroneous, but unreasonable." Id. (citing Waddington v. Sarausad, 129 S. Ct. 823, 831 (2009); Sturgeon v. Chandler, 552 F.3d 604, 609 (7th Cir. 2009)). Under the "unreasonable application" prong of (d)(1), it is not enough for the federal court to simply disagree with the conclusion of the state court; the state court's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. Middleton v. McNeil, 541 U.S. 433, 436 (2004); Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

**III. ANALYSIS**

**A. State's Reliance Upon False Testimony**

McAlister contends that the court of appeals' decision involved an unreasonable application of Napue v. Illinois, 360 U.S. 264 (1959), when it held that McAlister's right to due process was not violated by the state's failure to immediately correct the witness' false testimony that he was not

3

testifying as a result of any agreement with the state. The Court in Napue held that a defendant's due process rights are violated if the prosecution knowingly allows false testimony to go uncorrected at trial. Id. at 269. In the present case, the court of appeals found no due process violation because the state did not allow the witness' false testimony to stand uncorrected.

At the end of the second day of trial, during the cross-examination of McAlister's co-defendant Waters, the following testimony was elicited:

> Q: [Discussing the charges pending against Waters.] The case has been repeatedly delayed – your case has been repeatedly delayed because your lawyer and the prosecutor couldn't resolve your case until after you testified in [McAlister's] case?
>
> A: I'm not sure if that's the case; but yes, it has been delayed.
>
> Q: In that case, you have a total exposure to prison, for all your charges, of 154 years?
>
> A: Yes.
>
> Q: You understand that because you've agreed to testify here today, that what the prosecutor is going to do is he's somehow going to reduce your exposure?
>
> A: No. I didn't know any of that.
>
> Q: You were unaware that your lawyer had cut this deal with the prosecutor?
>
> A: No, no. I never – no one ever brought me anything about a deal to me, no.
>
> Q: Your lawyer, who is sitting right there, your position is he has never discussed with you the fact that you have an agreement with the DA?
>
> A: No.
>
> Q: So it is your position that you have come here to court today to testify and you don't expect to be rewarded for it?
>
> A: True.
>
> Q: And I want to be 100 percent certain about this. You don't know that the District Attorney has agreed that it will cut your exposure?
>
> A: No, I do not.

Q: And you didn't know that if you testified here today, he would recommend less prison than he would have if you hadn't testified?

A: No.

Q: Nobody's ever talked to you about that?

A: No.

(Ans. Ex. K at 152-53.) This questioning concluded the presentation of evidence for the day.

The following morning, the very next evidence the jury was presented was a stipulation that stated as follows:

> One, the District Attorney's office has agreed that it would reduce the maximum sentence Alphonso Waters faces by either dismissing some of his charges or reducing the seriousness of the charges.
>
> Two, the District Attorney's office has agreed to recommend that Alphonso Waters should serve less prison time than it would have recommended if Alphonso Waters had not testified in the trial of David McAlister.
>
> And three, Assistant District Attorney James Newlun conveyed the terms of this agreement to Alphonso Waters through his attorney Douglas Pachucki sometime prior to Waters testifying on January 23rd, 2007.

(Ans. Ex. L at 17-18.)

Regardless of whether this court were to conclude that Waters' testimony was perjurious, this is a conclusion the court of appeals did not make. (see Ans. Ex. E at ¶¶10-12). Any possibility that the jury might conclude that Waters was not receiving a personal benefit in exchange for his testimony against McAlister was promptly remedied with the stipulation. McAlister's attorney and the prosecutor responded precisely as they should have in such a situation. Accordingly, the court finds that this claim for relief is without merit. The decision of the court of appeals was not contrary to nor involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, notably, Napue v. Illinois, 360 U.S. 264 (1959), and the progeny thereof.

### B. State's Disclosure of Witness' Cooperation Agreement

McAlister contends that the state did not fully disclose the concession it gave to cooperating co-defendants in exchange for their testimony. (Docket No. 1 at 7.) As recounted by the court of appeals, "He contends that simply disclosing the agreements was insufficient because they were not reduced to writing; the jury was not told that they were "performance based"; and their terms were not disclosed to him until after Waters testified." (Ans. Ex. E at ¶4.)

The court of appeals rejected McAlister's arguments, relying in part upon the trial court's factual finding that the defendant was fully apprised of the terms of the agreement before the trial. (Ans. Ex. E at ¶8.) The court of appeals further held that there was no requirement that cooperation agreements be in writing. (Ans. Ex. E at ¶8.) The court also determined that the record does not support McAlister's contention that the prosecution's agreements with the cooperating defendants were "performance based." (Ans. Ex. E at ¶9.)

Due process requires that when there is an agreement between the prosecution and a cooperating witness regarding consideration the witness may receive in exchange for his testimony, this agreement must be disclosed to the defendant as potentially exculpatory information. <u>Giglio v. United States</u>, 405 U.S. 150, 154-55 (1972). However, McAlister has not presented, nor has the court identified, any case wherein a court has held that such cooperation agreements must be in writing in order to satisfy due process. Accordingly, McAlister's argument that his due process rights were violated because the agreement between the prosecution and the cooperating co-defendants were not in writing must fail. See <u>Wright v. Van Patten</u>, 552 U.S. 120, 126 (U.S. 2008) (per curiam) (holding that novel questions of law cannot form the basis for relief under § 2254).

As for McAlister's contention that the prosecution failed to disclose that the agreements with the cooperating defendants were "performance based," i.e. contingent upon the value of witness' testimony against McAlister, the only evidence McAlister musters in an effort to support

this claim are entries on the court's online docket and the fact that on the day following the conclusion of McAlister's trial, both testifying co-defendants appeared in court. (Ans. Ex. B at 35-36.)

According to the clerk's docket entries in Racine County Circuit Court cases 2005CF320 against Nathan J. Jefferson ("Jefferson"), (Ans. Ex. B at 121-24), and 2005CF286 against Alphonso Waters, (Ans. Ex. B at 125-29), the cases against both of these defendants were repeatedly delayed so that both defendants could testify at McAlister's trial. For example, docket numbers 13 and 14 in case number 2005CF320 state, respectively, "Plea offer contingent on testimony in another trial," and "Plea offer contingent on testimony." (Ans. Ex. B at 122.) Further proceedings in case number 2005CF320 are adjourned five times with the following relevant entries amongst the docket text for each respective subsequent status hearing: "Key witness in another def's trial;" "Def to testify in case scheduled for late June;" "To enter plea after testimony in co-actor's trial 08/22;" "To enter plea after testimony in co-def's JT;" and "To testify in co-def's trial." (Ans. Ex. B at 122-24.)

Similarly, in case number 2005CF286, the text accompanying docket number 13 states: "Joint req to adj JT; no offer to be extended until close of co-def's case." (Ans. Ex. B at 126.) At subsequent status conferences, the following text accompanies the respective docket entries: "Case should resolve. Def to testify in another def's trial;" "To testify in another trial; this adj'd until after JT date;" "Req to adj this trial until after def's testimony in another trial;" "To testify in co-def's JT;" and "Def to testify in co-def's trial which has been adj'd to 01/22/07." (Ans. Ex. B at 126-28.)

On the day following the conclusion of McAlister's jury trial, both of these co-defendants appeared in court. The text accompanying Waters' court appearance states: "Offer rec'd; def to consider; cop date requested. Plea hearing scheduled for 02-09-2007 at 10:30 am." (Ans. Ex. B at 127.) Waters subsequently pled guilty about two months later. (Ans. Ex. B at 127.) As for Jefferson,

7

on the day following the conclusion of McAlister's trial, Jefferson changed his plea to guilty. (Ans. Ex. B at 123.)

Clearly, the state was waiting to resolve McAlister's case before formalizing its agreements with the co-defendants. Such an arrangement is routine and the only reasonable way the state can be assured that a cooperating defendant will fulfill his end of the bargain. As is reflected by the portion of McAlister's cross-examination of Waters excerpted above, McAlister was aware that resolution of the charges against Waters was being delayed until after he testified against McAlister. (Ans. Ex. K at 152-53.) This timing alone does not raise a constitutional issue and, in fact, McAlister does not claim that it does. Rather, McAlister claims (or at least he did in his brief to the court of appeals; in his present petition, the issue is poorly developed) that the amount of benefit that each testifying co-defendant would receive would be dependent upon how much each defendant's testimony helped the prosecution. (Ans. Ex. B at 35-36.) Thus, hypothetically, if the witness could offer nothing but weak circumstantial evidence connecting McAlister to the crimes charged he would not be rewarded by the prosecution in the same way as he would if he could offer compelling eyewitness testimony clearly implicating McAlister.

Although such an agreement for favorable testimony would provide the jury with an additional reason to question the credibility of the testifying co-defendants and thus would be subject to disclosure under Giglio, McAlister offers no evidence to support the conclusion that such an agreement existed. The docket entries that McAlister points to do not support this conclusion; they simply establish an agreement for the co-defendants to testify.

Finally, McAlister's contention that the terms of the agreements between the state and the testifying co-defendants were not disclosed until after Waters testified is not borne out by the record. McAlister's trial attorney testified at a post-conviction evidentiary hearing that he was aware that the state had entered into general agreements with Jefferson and Waters whereby the

8

state agreed to reduce charges and / or make a favorable recommendation as to sentencing in exchange for their testimony against McAlister. (Ans. Ex. N at 46.)

Thus, the court's independent review of the record demonstrates that the prosecution's agreements with McAlister's co-defendants were adequately disclosed. Therefore, the court is unable to conclude that the court of appeals' decision was contrary to or involved an unreasonable application of clearly established federal law or was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, McAlister's claim for relief as to this ground must be denied.

### C. Jury Instruction

McAlister contends that the trial court erred by failing to provide Wisconsin's standard falsus in uno jury instruction. "Generally, in a habeas corpus action where the petitioner alleges constitutional error due to the trial court's refusal to allow a defense instruction, the constitutional question is limited to whether the petitioner sufficiently alleges a 'fundamental defect which inherently results in a complete miscarriage of justice.'" Leach v. Kolb, 911 F.2d 1249, 1257 (7th Cir. 1990) (quoting United States ex rel. Stamps v. Hartigan, 586 F. Supp. 1575, 1577 (N. D. Ill. 1984) (in turn quoting United States ex rel. Peery v. Sielaff, 615 F.2d 402, 404 (7th Cir. 1979)); Hill v. United States, 368 U.S. 424, 428 (1962)). When asked to consider if the absence of a particular jury instruction offended due process it is not sufficient that the trial court erred under state law or that the omitted instruction would have been desirable. See Estelle v. McGuire, 502 U.S. 62, 72 (1991). Rather, the question the court must ask is whether, considering the context of the instructions as a whole and the trial record, the absence of the instruction "so infected the entire trial that the resulting conviction violates due process." Id.

Wisconsin's standard falsus in uno jury instruction states: "If you become satisfied from the evidence that any witness has willfully testified falsely as to any material fact, you may, in your

discretion, disregard all the testimony of such witness which is not supported by other credible evidence in the case." (Ans. Ex. B at 51 (quoting Wis. JI-Criminal 305).) McAlister requested this instruction, (Ans. Ex. L at 150-52), but the court, despite considering it a "close case," refused to give what it considered a "seldom used" and "not favored" instruction. (Ans. Ex. L at 152-53.) The court determined that other pattern jury instructions regarding the credibility of witnesses, the testimony of accomplices, and the testimony of persons granted considerations or concessions, adequately addressed the matter. (Ans. Ex. L at 153.)

Having reviewed the relevant instructions given to jury, (Ans. Ex. M at 51-52), this court finds that given all relevant circumstances of this case, these instructions readily satisfied the minimums imposed by the constitution's due process clause. Therefore, the court is unable to conclude that the court of appeals' decision was contrary to or involved an unreasonable application of clearly established federal law or was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, McAlister's claim for relief as to this ground must be denied.

### D. Right to Confrontation / Ineffective Assistance of Trial Counsel

Finally, McAlister contends that his Sixth Amendment right to confront his accuser was violated by the prosecution's alleged reliance upon false testimony and failure to disclose the nature of the agreements with cooperating codefendants, (Docket No. 1 at 6-8; see also sections III A. and B., *supra*), and that his right to the effective assistance of trial counsel was denied when counsel failed to impeach Waters regarding his denial of the existence of an agreement with the state for this testimony, (Docket No. 1 at 10).

A federal court cannot grant a petition for a writ of habeas corpus under 28 U.S.C. § 2254 unless the "applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). When a petition contains claims for which the petitioner has exhausted his state

court remedies as well as those for which he has not exhausted his state court remedies, the petition is "mixed" and must generally be dismissed in its entirety. Rhines v. Weber, 544 U.S. 269, 273 (2005) (citing Rose v. Lundy, 455 U.S. 509 (1982)). However, with AEDPA's one-year statute of limitations for filing a § 2254 petition for a writ of habeas corpus, see 28 U.S.C. § 2244(d)(1), and the prohibition on state inmates filing more than one petition for a writ of habeas corpus, see 28 U.S.C. § 2244(a)-(b), dismissing the present petition in its entirety because it is a mixed petition would likely bar the petitioner from ever presenting his claims to a federal court.

Thus, when the respondent alleges that a petitioner has failed to exhaust his state court remedies, the petitioner generally requests that the court stay the proceedings and hold the petition in abeyance as he exhausts his state court remedies or asks for leave to amend his petition to delete his unexhausted claims. If a petition is mixed and a petitioner pursues neither of these options, the court generally has no choice but to deny the petition, either summarily as a mixed petition or on its merits pursuant to 28 U.S.C. § 2254(b)(2).

In his reply, (Docket No. 12), McAlister does not address the issue of exhaustion of his state court remedies. Similarly, in the portion of his petition where McAlister was instructed, "If you did not exhaust your remedies on Ground[s One, Two, Three, and Four], explain why," (Docket No. 1 at 7-10), McAlister left these sections blank.

Exhaustion requires the petitioner present his claim to the all levels of the state courts, including as part of a discretionary review by the state's highest court. O'Sullivan v. Boerckel, 526 U.S. 838, 843 (1999). Therefore, in order to determine exhaustion, the court turns to the petition for review filed with the Wisconsin Supreme Court, (see Ans. Exs. F, G), and looks to see if all the issues the petitioner raises in his present petition were raised in the petition for review.

Following his appellate counsel filing a "no merit" petition for review, (Ans. Ex. F), McAlister responded with his own petition for review, (Ans. Ex. G), wherein he raised the three

11

issues the court addresses above. Nowhere in these filings did McAlister fairly present a claim that his right to confrontation was denied or that his trial counsel was ineffective for failing to impeach Waters.

Because McAlister's petition contains both exhausted and unexhausted claims it is "mixed," and therefore the court is empowered to dismiss the petition in its entirety. McAlister has failed to demonstrate that it is appropriate to stay the proceedings and hold the petition in abeyance as he exhausts his state court remedies. Further, a stay would be inappropriate because, as discussed below, the court finds that McAlister's unexhausted claims are plainly without merit. However, as discussed above, dismissing the petition in its entirety as a "mixed" petition would likely foreclose McAlister's opportunity to ever have a federal court consider the merits of any of his claims. Therefore, because these additional claims are largely reinterpretations of the claims stated above for which McAlister has exhausted his state court remedies and are plainly without merit, the court finds the most efficient utilization of state and federal judicial resources is to exercise its authority pursuant to 28 U.S.C. § 2254(b)(2) and deny McAlister's petition upon its merits.

1. Right to Confrontation

As discussed above, a defendant has a due process right to present to the jury the fact that a state witness is testifying with the expectation of receiving some sort of benefit from the state. See Giglio, 405 U.S. at 154. However, some courts have recognized that under the Sixth Amendment, a defendant also has a right to confront this witness with evidence of bias. United States v. Bagley, 473 U.S. 667, 673 (1985) (citing Bagley v. Lumpkin, 719 F.2d 1462 (1983)); see also Davis v. Alaska, 415 U.S. 308, 319 (1974).

For the reasons set forth above in sections III. A. and B., the court finds no basis to support the conclusion that the state violated McAlister's right to confrontation. The record demonstrates that the state appropriately disclosed its agreements with cooperating witnesses. In response to

Waters' testimony where he seemed to falsely testify that he had not been promised anything from the state in exchange for his testimony, the state promptly corrected this misstatement.

### 2. Ineffective Assistance of Counsel

A petitioner seeking relief pursuant to 28 U.S.C. § 2254 due to an alleged denial of the effective assistance of counsel must demonstrate that the state court's decision on this issue was contrary to or involved an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984). Wright v. Van Patten, 552 U.S. 120, 122(2008) (per curiam). Under Strickland, a petitioner is entitled to relief only if he can prove the following two elements. Goodman v. Bertrand, 467 F.3d 1022, 1027 (7th Cir. 2006). First, the petitioner must prove that his counsel's performance was unreasonable. In assessing the reasonableness of counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Raygoza v. Hulick, 474 F.3d 958, 962 (7th Cir. 2007) (quoting Strickland, 466 U.S. at 689). A court assessing the reasonableness of an attorney's performance must be cautious not to view counsel with the distorted perspective offered by hindsight; rather, every effort must be made to evaluate an attorney's performance from the perspective of counsel at the time. Strickland, 466 U.S. at 689. An attorney's actions do not become unreasonable simply because they proved unsuccessful. Id.

Second, the petitioner must prove that this unreasonable conduct prejudiced his defense. It is not enough for petitioner to show that the attorney's error had "some conceivable effect on the outcome." Raygoza, 474 F.3d at 962-63 (quoting Strickland, 466 U.S. at 693). But on the opposite side, it is not necessary for the petitioner to demonstrate that the error more likely than not altered the outcome of the case. Id. Rather, the petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

13

been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694).

McAlister alleges that his trial counsel was ineffective for failing to impeach Waters after he testified that he had not received any consideration from the state in exchange for his testimony. The portion of McAlister's cross-examination of Waters quoted above demonstrates that McAlister's attorney adequately tried to elicit the truth from Waters. Waters simply would not budge. Such conduct was plainly not unreasonable; an attorney cannot make an uncooperative witness say anything and this includes forcing a witness correct an objectively inaccurate statement.

Moreover, alternative means of attempting to elicit the fact of whether Waters was testifying as a result of some sort of bargain struck with the state were unnecessary because McAlister had obtained the best a defendant could hope for—essentially the state agreeing that one of its main witnesses had lied under oath. A stipulation carrying the imprimatur of the prosecution was far more effective from the defense perspective than, for example, recalling Waters as a witness where he would have had an opportunity to explain his apparent misstatement. (See Ans. Ex. N at 64-65.)

The record clearly demonstrates that McAlister's trial counsel responded appropriately to Waters' apparently false testimony and that McAlister did not suffer any prejudice as a result of any alleged deficiency. Accordingly, the court finds that this claim for relief is without merit.

## IV. CONCLUSION

For the reasons set forth above, the court shall deny McAlister's petition for a writ of habeas corpus. The record demonstrates that the state appropriately disclosed the agreements it had with the co-defendants who testified against McAlister and did not rely upon false testimony. When a cooperating defendant testified apparently falsely about whether he expected to receive any consideration from the prosecution in exchange for his testimony, the state promptly corrected this misstatement. Further, considering the totality of the circumstances, the trial court's decision to not

provide the jury with a falsus in uno instruction did not offend the constitution. Finally, although McAlister's petition contains unexhausted claims, because the court concludes that these unexhausted claims are meritless, the court exercises its discretion under 28 U.S.C. § 2254(b)(2) and denies McAlister's petition upon its merits.

In accordance with Rule 11 of the Rules Governing Section 2254 Cases and 28 U.S.C. § 2253(c)(2), the court concludes that McAlister has failed to make a substantial showing of the denial of a constitutional right and therefore hereby denies McAlister a certificate of appealability.

**IT IS THEREFORE ORDERED** that McAlister's petition for writ of habeas corpus is **denied**. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that McAlister has failed to make a substantial showing of the denial of a constitutional right and therefore a certificate of appealability is **denied**.

Dated at Milwaukee, Wisconsin this 1st day of October, 2010.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge